**In re Carol KARLOVICH, Debtors.**

**No. 10–10860–PB11.**

United States Bankruptcy Court,
S.D. California.

Nov. 16, 2010.

Gustavo E. Bravo, John L. Smaha, John Paul Teague, Smaha Law Group, APLC, San Diego, CA, for Debtor.

## ORDER ON MOTION FOR RELIEF FROM STAY

PETER W. BOWIE, Chief Judge.

This rather convoluted bankruptcy case has given rise to a very discreet legal issue—whether, in this post-BAPCPA era, the absolute priority rule applies in a chapter 11 case of an individual. For the reasons set forth below, the Court holds that it does.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (G).

### BACKGROUND

Creditor San Diego County Credit Union (SDCCU) seeks relief from the automatic stay in this individual debtor's Chapter 11 case in order to conduct a nonjudicial foreclosure of the debtor's Knoll Road property. For purposes of this motion SDCCU stipulates to the debtor's val-

ue of $1.33 million. SDCCU is owed over $2.8 million. SDCCU's core argument is that the Knoll Road property is not necessary to an effective reorganization. To the contrary, it impairs a reorganization. The debtor proposes to strip down the undersecured portion of the debt—approximately $1,477 million—and add that amount to the unsecured debt to be addressed in the debtor's Chapter 11 plan. SDCCU argues even if that were accomplished, the Knoll Road property would generate little net cash flow to the estate (as acknowledged by debtor in her draft disclosure statement) for the next several years, while adding a large amount of debt to the class of unsecured creditors, thereby diluting the return to other unsecured creditors significantly.

Section 362(d)(2) of Title 11 provides that relief from the automatic stay should be granted if the debtor has no equity in the property and the property is not necessary for reorganization. It is stipulated, for purposes of the hearing, that debtor has no equity in the property. So, as SDCCU argues, necessity for reorganization is the remaining issue. While SDCCU argued its position from every conceivable facet, including the inability of the debtor to meet the absolute priority rule, the debtor argued that knowing whether the absolute priority rule applies in individual Chapter 11 cases is essential for the debtor to determine how to proceed. Debtor argues that SDCCU would have the opportunity to elect certain treatment of the debt owed to it under 11 U.S.C. § 1111(b) which, in turn, would affect how the debtor would be able to deal with the debt. Debtor says she wants to keep the Knoll Road property so she can recover the capital invested in it when the market improves. At the hearing on the motion for relief from stay, the parties and the Court concluded that before the parties can fully discuss and resolve whether the property is necessary to an effective reorganization the Court must decide whether the absolute priority rule applies in this case. The Court took the matter under submission to answer that question.

## DISCUSSION

■ If a plan is not accepted by all classes of creditors it may still be confirmed so long as it is "fair and equitable." 11 U.S.C. § 1129(b)(1). With respect to the members of a class of unsecured creditors, a plan is "fair and equitable" under section 1129(b)(2)(B) if they are paid in full or no junior class retains any interest in estate property. This is typically referred to as the "absolute priority rule." Section 1129(b) is one of several sections which was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The amendments have given rise to disagreement between the courts, as well as the parties to this case, on whether the absolute priority rule, as amended by BAPCPA, still applies to individual chapter 11 debtors. The prior and current forms of the absolute priority rule were well discussed in *In re Gbadebo*:

> Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 11 U.S.C. § 1129(b)(2)(B) stated that, if an impaired class of unsecured claims voted against a plan, the plan could not be confirmed unless the court found that it was "fair and equitable." "Fair and equitable" meant, at a minimum, that either the class would receive property with a present value equal to its claim or no one with a claim or interest junior to the class of unsecured claims would retain any property. This provision applied to both individual debtors and debtors that were entities. This provision is generally referred to as the "absolute priority" rule.

BAPCPA modified the "absolute priority" rule as applied to individual debtors. Section 1129(b)(2)(B)(ii) now states that a plan may be "fair and equitable" even though the debtor retains "property *included in the estate under* section 1115...." 11 U.S.C. § 1129(b)(2)(B)(ii) (emphasis added). Section 1115 is a new provision, also added by BAPCPA. It states as follows:

(a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541–

(1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

(b) Except as provided in section 1104 or a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

11 U.S.C. § 1115 (emphasis added).

431 B.R. 222, 227 (Bankr.N.D.Cal.2010).

■ Since these amendments to the Code several courts have addressed this issue and have reached divergent results. One camp has held that Congress abolished the absolute priority rule with respect to individual debtors, the other that it did not. For the reasons set for below, this Court believes the latter side more correctly explains Congress' action.

■ Section 1129(b)(2)(B)(ii) does not expressly exclude individuals. It does, however, provide that, unlike other chapter 11 debtors, individuals may retain some property—"property included in the estate under section 1115 ..." As set forth above, § 1115 provides that in the case of an individual chapter 11 debtor "property of the estate includes, in addition to the property specified in section 541 ... all property of the kind specified in section 541 that the debtor acquires after the commencement of the case...." So for an individual chapter 11 debtor property of the estate includes all non-exempt property which would be property of the estate for any chapter 11 debtor plus, as added by § 1115, property acquired post-petition.[1]

The courts that held that the absolute priority rule is abolished with respect to individual debtors begin by finding ambiguity in § 1129(b)(2)(b)(ii) and its reference to § 1115. They conclude that the sections are susceptible to the interpretation that all property of an individual may be retained under § 1129(b)(2)(B)(ii):

This new provision both refers to the property already brought into the bankruptcy estate by § 541 and brings more property into the estate. Unfortunately, the exception and § 1115(a) are worded in such a way that the exception could be construed narrowly to cover only the additional, postpetition property brought into the Chapter 11 bankruptcy estate by § 1115(a), or broadly to cover not only that property but also all the property brought into the estate by § 541, most of which is property the debtor had before filing for bankruptcy. The first construction would greatly limit the impact of the new exception under

1. Before and after BAPCPA the individual chapter 11 debtor is, unlike his entity counter-

parts, entitled to exempt property under § 522.

§ 1129(b)(2)(B)(ii), but the second would exempt an individual Chapter 11 debtor from the main facet of the absolute priority rule, allowing him or her to retain both pre-and postpetition property under a plan even though a class of unsecured creditors would not be paid in full. The Court must determine which interpretation matches Congress's intent in making these changes.

*In re Roedemeier*, 374 B.R. 264, 274 (Bankr.D.Kan.2007). See also *In re Shat*, 424 B.R. 854, 862 (Bankr.D.Nev.2010).

 This Court disagrees with the foregoing and holds that the most reasonable interpretation is the one referred to as "narrow." The Court in *Gbadebo* explained:

> If the Court were writing on a clean slate, it would view the language of § 1129(b)(2)(B)(ii) as unambiguous. The Court would read the phrase "included in the estate under section 1115" to be reasonably susceptible to only one meaning: i.e., added to the bankruptcy estate by § 1115.

431 B.R. at 229. The Court parts company with *Gbadebo* in that this Court finds it is writing on a clean slate. The Court appreciates the analysis of the prior courts. However, none of them are binding on this Court. Without binding precedent, the Court's first step in statutory analysis is to review the statutory scheme and determine if there is a clear unambiguous answer. "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). When statutory language is plain, "the sole function of the courts is to enforce it according to its terms." *Id.*

The Court finds that there is a plain, unambiguous reading of the statutes. Section 1129(b)(2)(B)(ii) limits the application of the absolute priority rule by allowing an individual to retain only the "property included in the estate under § 1115." The property included under § 1115 is property "the debtor acquires after the commencement of the case . . ."

The effect of the new provision in § 1129(b)(2)(B)(ii) is not to abrogate the absolute priority rule, but to make it the same for individual and non-individual Chapter 11 debtors, as it was prior to BAPCPA. In fact, when read in conjunction with newly added § 1115, the absolute priority rule with respect to individuals is exactly the same as it was pre-BAPCPA. That is, prior to BAPCPA, property of the estate did not include post-petition acquired property and earnings for individuals and non-individuals alike. Hence, post-petition acquired property and earnings could be retained by a Chapter 11 debtor, individual and non-individual alike, without running afoul of the absolute priority rule. The addition of § 1115 potentially changed that by adding to the property of the estate of an individual post-petition acquired property and earnings. Without a corresponding change to § 1129(b)(2)(B)(ii), individual debtors could no longer retain post-petition acquired property and earnings if they wished to "cram down" a plan. By adding the language excepting the § 1115 property from the absolute priority rule of § 1129(b)(2)(B)(ii), Congress merely ensured that the absolute priority rule would be the same as it had been prior to BAPCPA and be the same for all Chapter 11 debtors. In other words, what Congress took from the individual debtor with its § 1115–hand, it returned for application of the absolute priority rule with its § 1129(b)(2)(B)(ii)-hand.

To this Court that seems the most likely objective of the new language in § 1129(b)(2)(B)(ii)—that it balances out the effect of § 1115. To this Court, that is far more likely than that Congress intended to abrogate the absolute priority rule for individuals. Had that been the objective, Congress could easily have added "except with respect to individuals" at the beginning of § 1129(b)(2)(B)(ii), or stated that an individual could retain all property. As it is, the Court finds no ambiguity in the post-BAPCPA statutory scheme—the absolute priority rule with respect to an individual debtor has been kept equal with that of non-individuals, but not abrogated. See *In re Gelin*, 437 B.R. 435 (Bankr. M.D.Fla.2010); *In re Mullins*, 435 B.R. 352, 360 (Bankr.W.D.Va.2010). In fact, as the Court reads § 1115 and § 1129(b)(2)(B)(ii), the absolute priority rule has not been altered at all by BAPCPA.

Some of the courts which viewed the BAPCPA amendments as an abrogation of the absolute priority rule in individual Chapter 11 cases did so because they thought Congress was intending to make individual Chapter 11 cases more like Chapter 13 cases, where there is no absolute priority rule. What those courts overlook is that if that were Congress' intent, Congress would simply have amended the statutory debt ceilings for Chapter 13 cases set out in 11 U.S.C. § 109(e), and either eliminate them altogether or set them much higher. Congress did no such thing, instead clearly intending that Chapter 11 statutory provisions would continue to apply to individual Chapter 11 cases while recognizing that post-petition earnings of individual Chapter 11 debtors should be available under § 1129(b)(2)(B), and protected, as it is in Chapter 13 cases under 11 U.S.C. § 1306.

## CONCLUSION

For the foregoing reason, the Court holds that the absolute priority rule applies to individual chapter 11 debtors. A status conference on San Diego County Credit Union's motion for relief from stay will be held at 10:30 a.m. on January 18, 2011.

IT IS SO ORDERED.