# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 29, 2013

No. 12-20277

Lyle W. Cayce
Clerk

In the Matter of:  PHILIP REED LIVELY,

Debtor

------------------------------

PHILIP REED LIVELY,

Appellant

Appeal from the United States Bankruptcy Court
for the Southern District of Texas

Before JONES, DENNIS and HIGGINSON, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The denial of confirmation of an individual Chapter 11 debtor's reorganization plan was certified for appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(d)(2)(A)(i) and (ii) to resolve a question of first impression in this circuit:  whether Chapter 11's absolute priority rule, 11 U.S.C. § 1129(b)(2)(B), as amended by the BAPCPA[1], applies in such individual debtor cases?  In accord with two other circuits, we hold that it does.  *In re Stephens,* 704 F.3d 1279 (10th Cir. 2013); *In re Maharaj*, 681 F.3d 558 (4th Cir. 2012).  The bankruptcy court's order denying confirmation is affirmed.

---

[1] Bankruptcy Abuse Prevention & Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005).

No.  12-20277

Debtor Philip Lively's Chapter 13 case was converted to Chapter 11 after a creditor filed a claim that caused his scheduled debts to exceed the debt ceiling for Chapter 13 cases.   Proceeding in Chapter 11, Lively proposed a reorganization plan that, *inter alia*, allowed him to retain all of his property, including the net value of a mortgage and net lease income from nine railroad tank cars, while paying unsecured creditors a small dividend that exceeded the liquidation value of his assets.  No competing plans were filed; no objections to confirmation were filed by any creditor.  Although the unsecured claims class voted overwhelmingly in dollar amount to approve the plan, the majority of that class voted by number of claims to reject it.

At the confirmation hearing, the court was thus required to determine whether the absolute priority rule applies, preventing confirmation unless the dissenting, impaired unsecured creditor class was "crammed down."  The court was obliged independently to determine whether the reorganization plan complies with applicable law.  *In re Williams*, 850 F.2d 250, 253 (5th Cir. 1988). The court held that the absolute priority rule applies,  denied confirmation, and certified the issue for immediate appeal, because the issue  is arising with some frequency in the Fifth Circuit and has been the subject of conflicting bankruptcy court opinions.  This court accepted the certification.  We note that Lively alone has filed a brief, as no parties in interest have come forward on this point.  The appeal is properly before this court.

## DISCUSSION

We review *de novo* this issue of statutory interpretation.  *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).  The absolute priority rule provides that a Chapter 11 reorganization plan is "fair and equitable" with respect to a

No. 12-20277

dissenting class of unsecured claims, if

> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property; *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.*

11 U.S.C. § 1129(b)(2)(B)(emphasis added). Lively does not dispute that his plan fails to comply with the absolute priority rule, because it allows him to retain the above-listed valuable, non-exempt, pre-petition assets. Relying on a minority string of bankruptcy court authorities,[2] he asserts that the "exception" italicized above, which was carved out of the absolute priority rule when the Bankruptcy Code was amended in 2005, exempts him entirely from its operation. The question he poses is: what does the provision mean when it allows an individual debtor to retain property *included* in the debtor's estate *under* § 1115. 11 U.S.C. § 1115(a), also added in 2005, states:

> In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in [11 U.S.C. §] 541—
>> (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case . . . ; and
>> (2) earnings from services performed by the debtor after the commencement of the case . . . .

---

[2] *See, e.g. Friedman v. P+P, LLC (In re Friedman)*, 466 B.R. 471 (9th Cir. B.A.P. 2012)., *In re Shat*, 424 B.R. 854 (Bankr. D. Nev. 2010); *In re Roedemeier*, 374 B.R. 264 (Bankr. D. Kan. 2007).

No. 12-20277

Section 541 is the comprehensive description of "property of the debtor's estate" at the commencement of a case in any chapter (7, 9, 11, 12, or 13) of the Bankruptcy Code.

Most of the cases that have interpreted BAPCPA's modification of the absolute priority rule have found the amendatory language ambiguous and have gone on to examine unenlightening legislative history and extrinsic interpretive factors to arrive at either a "narrow" or "broad" interpretation. The "narrow" interpretation holds that the absolute priority rule was amended so that individual debtors could exclude from its reach only their post-petition earnings and post-petition acquisitions of property, *i.e.*, only property that was not already included in the Chapter 11 estate by § 541.[3] The "broad" interpretation holds that the exception's (§ 1129(b)(2)(B)(ii)) reference to property "included in" the individual debtor's estate "under" § 1115 subsumes or supersedes the § 541 definition completely, thus effecting abrogation of the absolute priority rule. *See* n.2 *supra*.

To answer Lively's question, we use standard tools of statutory interpretation, which focus on the language of the statute taken in the context of the Bankruptcy Code of which it is a part. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070-71 (2012). So doing, we are inclined to agree with the bankruptcy court in this case that the "narrow" interpretation is unambiguous and correct, and the exception to the absolute priority rule plainly covers only the individual debtor's post-petition earnings and

---

[3] *See, e.g.*, *In re Maharaj, supra*; *In re Stephens*, 445 B.R. 816 (Bankr. S.D. Tex. 2011); *In re Gelin,* 437 B.R. 435 (Bankr. M.D. Fla. 2010); *In re Gbadebo,* 431 B.R. 222 (Bankr. N.D. Cal. 2010); *In re Karlovich*, 456 B.R. 677 (Bankr. S.D. Cal. 2010).

No. 12-20277

post-petition acquired property. But even if the statutory language is ambiguous, then the "narrow view" must prevail, because the opposite interpretation leads to a repeal by implication of the absolute priority rule for individual debtors. *In re Maharaj*, 681 F.3d at 571.

A plain reading of § 1129(b)(2)(B)(ii) in light of § 1115(a) is that both provisions were adopted when BAPCPA was passed in order to coordinate individual debtor reorganization cases to some extent with Chapter 13 cases, whose debt limit may throw debtors like Lively into a Chapter 11 reorganization. *See* 11 U.S.C. § 109(e). Had Chapter 11 remained unaltered, Lively could reorganize in Chapter 11 under more favorable terms than those available to chapter 13 debtors. Chapter 13 subjects a debtor's post-petition "disposable income," including his salary and earnings, to creditor claims as a plan confirmation requirement. Before the BAPCPA amendments, however, an individual Chapter 11 debtor would only have to satisfy the absolute priority rule with assets that were "property of the estate" at the date of filing for relief; the individual debtor's personal post-petition earnings were not subject to liability to satisfy his creditors. In § 1115, Congress remedied this potential inequity in Chapter 11 by adding to the § 541 definition the individual debtor's post-petition earnings and property acquisitions. Other effects of this amendment were to bring such property interests within the protection of the automatic stay, *In re Maharaj*, 681 F.3d at 570, which benefits the individual debtor, while enabling court supervision of the debtor's use of those interests. *See, e.g.*, 11 U.S.C. §§ 363(b), (c)(1).

When the debtor's post-petition property and earnings were added to Chapter 11, however, Congress also had to modify the absolute priority rule so

No.  12-20277

that a debtor would not be saddled with committing all post-petition property to satisfy creditors' claims.  *See In re Kamell*, 451 B.R. 505, 511 (Bankr. C.D. Cal. 2011) ("the property included in the estate under § 1115 includes all post-petition earnings, not limited by deduction for monthly expenses [as in Chapter 13] . . .[s]o, if the 'absolute priority rule' persisted after BAPCPA, it would have prevented the debtor from keeping any of his post-petition earnings as the price for cram down; thus enters the necessary amelioration in § 1129(b)(2)(B)(ii) . . . .  But this is as far as one needs to go to make sense of the new statutory scheme.")  This most natural reading of the amendments renders no Code provision superfluous and reveals a reasonable purpose.

The case law finding ambiguity rests on the terms "included in" and "under," two words not normally the subject of such parsing.  Reading the phrase in § 1129(b)(2)(B)(ii) to evince ambiguity seems a grammatical stretch, because § 1115 expressly states that property is being "added" to that comprised by § 541; the section does not supersede § 541 property, any more than "2"supersedes "3" when added to it.  *See also In re Seafort*, 669 F.3d 662 (6th Cir. 2012) (interpreting similar provision, 11 U.S.C. § 1306(a)).[4]

But if ambiguity exists, the consequence of the "broad view" is that the "except" clause abrogates the absolute priority rule for individual debtors.  This is a startling, and most indirect, way for Congress to have effected partial

---

[4] One argument for ambiguity is that exempting only post-petition earnings and property from the absolute priority rule would confer at best a trivial benefit on a Chapter 11 debtor.  The bankruptcy court here thoroughly repudiated that argument with a simple hypothetical showing that if an individual debtor either increased his earnings or reduced his expenses post-confirmation, he would be better off even under a plan confirmed according to 11 U.S.C. § 1129(a)(15), which, if invoked, requires a commitment of the debtor's "disposable income" for five years.

No.  12-20277

implicit repeal of the very provision that the section amended.  As a matter of standard statutory construction, this result is unacceptable.  Repeals by implication are disfavored and will not be presumed unless the legislature's intent is "clear and manifest."  *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662, 127 S. Ct. 2518, 2532 (2007).  The Court has also explained that "we will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Hamilton v. Lanning*, ___ U.S. ___, 130 S. Ct. 2464, 2473 (2010) (quotation omitted).  The absolute priority rule, in particular, has been a cornerstone of equitable distribution for Chapter 11 creditors for over a century.  We must presume Congress was well aware of that rule and, in the absence of a clearer directive, modified § 1129(b)(2)(B)(ii) in order to refine it, not reverse it, for individual debtors.

For these reasons, the bankruptcy court's judgment is AFFIRMED.