[PUBLISH]

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12342

_____

In Re: 2 MONKEY TRADING, LLC,
LUCKY SHOT USA, LLC,

Debtors.

_____

BENSHOT, LLC,

Plaintiff-Appellant,

*versus*

2 MONKEY TRADING, LLC,
LUCKY SHOT USA, LLC,

Defendants-Appellees.

_____

2                          Opinion of the Court                    23-12342

Appeal from the United States Bankruptcy Court
for the Middle District of Florida
D.C. Docket No. 6:22-bk-04099-TPG

_____

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

This appeal presents a difficult statutory interpretation question related to two provisions within the Bankruptcy Code. In 2019, Congress passed Subchapter V amending Chapter 11 of the Bankruptcy Code to relieve small business debtors of the requirements of the absolute priority rule. *See* 11 U.S.C. § 1181 *et seq.* As relevant to this appeal, Subchapter V allows these debtors to discharge their debts "except any debt…of the kind specified in section 523(a)." 11 U.S.C. § 1192. Appellant BenShot, LLC argues that Subchapter V applies to both individual and corporate debtors, so neither group can discharge debts listed under § 523(a). Appellees-Debtors 2 Monkey Trading, LLC and Lucky Shot USA, LLC, however, argue that § 523(a) limits the scope of the exception to just individual debtors, so corporate debtors, like themselves, can discharge those kinds of debts.

Various courts have opined on this question with no consensus reached. Two of our sister circuits have acknowledged its complexity. *See In re GFS Indus., L.L.C.*, 99 F.4th 223 (5th Cir. 2024); *In re Cleary Packaging, LLC*, 36 F.4th 509 (4th Cir. 2022). That said, they have both concluded that in Subchapter V proceedings, neither

individual nor corporate debtors can discharge debts listed under § 523(a). *In re GFS*, 99 F.4th at 232; *In re Cleary*, 36 F.4th at 517–18.[1] Bankruptcy courts across the country are split on this question.

After careful review and with the benefit of oral argument, we agree with the Fourth and Fifth Circuits. Accordingly, we reverse and remand.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

BenShot, LLC is a family-owned business that sells a unique drinking glass design that it invented—a bullet "penetrating" the side via an indentation in the glass. These glasses are made in the United States. 2 Monkey Trading, LLC and Lucky Shot USA, LLC ("the Debtors") sell drinking glasses with a similar design, but they import the glasses from China and falsely advertise them as "Made in the United States." In pre-bankruptcy litigation, BenShot sued the Debtors for violations under the Lanham Act and Wisconsin common law in federal court in the Eastern District of Wisconsin. A jury found for BenShot on all claims and awarded BenShot punitive damages. Of note, question 5 of the verdict form asked the jury whether the Debtors acted "maliciously toward" BenShot or "in an intentional disregard of" BenShot's rights, to which the jury answered "yes."

---

[1] We note that the Ninth Circuit's Bankruptcy Appellate Panel ("BAP") went the other way, holding that the non-dischargeable debts applied only to individual debtors. *See In re Off-Spec Sols., LLC*, 651 B.R. 862 (B.A.P. 9th Cir. 2023).

Shortly thereafter, the Debtors filed for bankruptcy under Subchapter V of Chapter 11. But in the bankruptcy and debt-discharge process, BenShot brought a complaint against the Debtors, arguing that its jury award from the Wisconsin trial was a non-dischargeable debt for willful and malicious injury under 11 U.S.C. §§ 523(a)(6) and 1192(2). The Debtors moved to dismiss the complaint for failure to state a claim because § 523(a)(6) only applied to individual debtors, not corporate debtors like themselves.

The bankruptcy court sided with the Debtors and dismissed the complaint. In arriving at its ruling, the bankruptcy court noted that several bankruptcy courts around the country have interpreted § 523(a)'s discharge exceptions to exclude corporate debtors, including a recent decision by the same court: *In re Hall*, 651 B.R. 62 (Bankr. M.D. Fla. 2023). The bankruptcy court found *In re Hall*'s analysis persuasive and rejected the Fourth Circuit's *In re Cleary* that came to the opposite conclusion.

A timely appeal followed.

## II.    STANDARD OF REVIEW

We review determinations of law, whether made by the bankruptcy court or district court, *de novo*. *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990). We review *de novo* the dismissal of a complaint for failure to state a claim. *In re MacPhee*, 73 F.4th 1220, 1238 (11th Cir. 2023).

## III.    ANALYSIS

### A.  Statutory Language and Background

Under a traditional Chapter 11 petition, the debtor and its creditors will try to negotiate a plan that governs the distribution of assets from the debtor's estate and keeps the business operating. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 455 (2017) (citing 11 U.S.C. §§ 1121, 1123, 1129, 1141). If a class of creditors refuses to consent to a plan, the debtor can nevertheless impose one on the dissenting class through confirmation of a nonconsensual plan often referred to as a cramdown. *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 (1999). To impose a cramdown, a dissenting class's objections can be overridden only if "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." *Id.* (citing 11 U.S.C. § 1129(b)(1)). A cramdown can only be fair and equitable if the dissenting class's claims are paid in full or "the holder of any claim or interest that is junior to the claims of such [dissenting] class will not receive or retain under the plan on account of such junior claim or interest any property." *Id.* at 441–42 (citing 11 U.S.C. §§ 1129(b)(2)(B)(i), (ii)). The latter condition is called the absolute priority rule. *Id.* at 442. Put otherwise, there can be no reorganization plan if claims junior to the dissenting class's claims receive any payment on account of their subordinate status. Because the Bankruptcy Code "places equity holders at the bottom of the priority list," pre-bankruptcy owners receive nothing until all the senior claims have been paid in full. *Czyzewksi*, 580 U.S. at 457.

The absolute priority rule developed to limit the "the danger inherent in any reorganization plan proposed by a debtor, then and

now, that the plan will simply turn out to be too good a deal for the debtor's owners." *Bank of Am. Nat. Tr.*, 526 U.S. at 444.  But the rule is not without flaws.  There have been attempts to liberalize this rule by "permit[ting] equity holders to participate in a reorganized enterprise" so that they can use their management expertise to provide value beyond "money or money's worth."  *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 205 (1988) (quoting H.R.Doc. No. 93–137, pt. 1, pp. 258–259 (1973)).

In 2019, Congress passed Subchapter V in the Small Business Reorganization Act ("SBRA") to streamline the reorganization process for small business debtors.  *See* 11 U.S.C. § 1181 *et seq.*  Under the SBRA, a "small business debtor" is an individual, corporation, or partnership engaged in a commercial or business activity with an aggregate debt of less than $2 million when the petition is filed. 11 U.S.C. § 101(51D).[2]  Subchapter V offers several benefits to small business debtors, but the most relevant here is the abrogation of the absolute priority rule.  *See* 11 U.S.C. § 1191(c).

Subchapter V allows a debtor to confirm a plan non-consensually under § 1191(b), which departs from the Code's inflexible priority scheme.  *See id.*  Under a non-consensual plan, the SBRA allows equity holders to retain their interests in the business even though general unsecured creditors, who are higher in the pecking

---

[2] The cap was temporarily raised to $7.5 million as part of the coronavirus pandemic relief package.  Coronavirus Aid, Relief, And Economic Security Act, Pub. L. No. 116-136, Div. A, Title I, § 1113(a)(5), 134 Stat 281 (2020).

order than equity holders, have yet to be paid out. *See id.* To confirm a plan non-consensually, a court need only find that the debtor's projected disposable income will be paid to creditors for three to five years following the plan's confirmation. *Id.* §§ 1191(c)(2)(A), (3), 1192(1).

If a debtor proceeds with a non-consensual plan, then the dischargeability of debts is governed by § 1192. *See id.* § 1181(c). Under § 1192, after the debtor completes the payment plan, the bankruptcy court:

> "*shall grant the debtor a discharge of all debts* provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in the plan, *except any debt—*
>
> (1)    on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or
>
> (2)    *of the kind specified in section 523(a) of this title.*"

*Id.* § 1192 (emphasis added).

Here, BenShot argues that, even though the Debtors submitted a non-consensual plan, they cannot discharge BenShot's jury award because it is a debt "of the kind specified in section 523(a)." *Id.* And § 523(a) lists a range of non-dischargeable debts including those "for willful and malicious injury by the debtor to another entity or to the property of another entity." *Id.* § 523(a)(6). That is

the exact kind of debt incurred by the Debtors as a result of the jury award in favor of Benshot.

But complicating BenShot's reading is § 523(a)'s preamble: "A discharge under section 727, 1141, *1192*, 1228(a), 1228(b), or 1328(b) of this title does not discharge an *individual debtor* from any debt…" *Id.* § 523(a) (emphasis added). The Debtors thus counter that the phrase "individual debtor" excludes corporate debtors, like themselves, from the scope of § 523(a), so BenShot's jury award is dischargeable.

The dispute here is how to best interpret the interplay between § 1192(2) and § 523(a)—does § 1192's discharge provision, which references § 523(a), apply to individual and corporate debtors? We answer in the affirmative.

### B. Plain Language and Statutory Context

We begin our statutory interpretation exercise "with the words of the statutory provision." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (quoting *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc)). "When the import of the words Congress has used is clear, as it is here, we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Harris*, 216 F.3d at 976. "When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) (quotation omitted); *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) ("[W]e must

presume that Congress said what it meant and meant what it said."). Our role as judges is to interpret the text, not to improve it. *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 508–09 (2014).

The natural starting point of our statutory interpretation analysis is § 1192 because we only consider § 523(a) after determining that the debtor is pursuing a non-consensual plan. And § 1192's plain text is unambiguous—§ 1192's discharge exception applies to both corporate and individual debtors.

To start, the statute begins by stating "[i]f the plan of the *debtor* is confirmed under section 1191(b) of this title," then "the court shall grant the *debtor* a discharge of all debts…except any *debt*…of the kind specified in section 523(a) of this title." § 1192 (emphasis added). The Bankruptcy Code defines "debtor" as "a person engaged in commercial or business activities." *In re GFS Indus.*, 99 F.4th at 228 (quoting 11 U.S.C. § 1181(1)(A)). And a "person" is further defined to include both individuals and corporations, with the latter covering limited liability companies. *In re Cleary*, 36 F.4th at 514 (citing 11 U.S.C. §§ 101(9)(A) and (41)). So § 1192 applies to both individual and corporate debtors. *See In re GFS Indus.*, 99 F.4th at 228; *In re Cleary*, 36 F.4th at 514–15.

Moving to the next key word "debt," the Bankruptcy Code does not define debt to distinguish between individual or corporate debtor. "Debt" is defined as a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is a "right to payment." *Id.* § 101(5)(A). Of course, there are some debts that only an individual or corporate

debtor can hold, but "debt," as defined under the Bankruptcy Code, is agnostic to who the holder is. And when Congress intended to make a specific distinction between individual or corporate debt, it has done so. For example, the Code defines "consumer debt" as "debt incurred by an *individual* primarily for a personal, family, or household purpose." *Id.* § 101(8) (emphasis added).

After defining "debtor" and "debt," we turn to § 1192(2), which excepts from discharge "any *debt…of the kind* specified in section 523(a)." *Id.* § 1192(2) (emphasis added). The most natural reading of that language is that "of the kind" modifies "debt." The ordinary meaning of "kind" is a "category" or "a group united by common traits or interests." *Kind*, MERRIAM-WEBSTER DICTIONARY, July 25, 2019, https://web.archive.org/web/20190725143841/https:/www.merriam-webster.com/dictionary/kind, [https://perma.cc/R3Q9-F85R].[3] And the common trait or interest shared among this category of excepted debt is that it is "specified in section 523(a)"—the twenty-one categories of non-dischargeable debt under § 523(a). So taken all together, the court will grant the "debtor"—which includes individual and corporate debtors—a discharge of its debts except for the twenty-one kinds of debt found in § 523(a).

The Debtors rebut by arguing that "specified in § 523(a)" includes § 523(a)'s preamble, which limits any non-dischargeable

---

[3] Section 1192(2) was passed as part of the 2019 amendments to the Bankruptcy Code. 11 U.S.C. § 1192 (enacted Aug. 23, 2019).

debts found under § 523(a) to an "individual debtor." The argument is unconvincing for two reasons. First, as the Fourth Circuit stated, "while § 523(a) does provide that discharges under various sections, including § 1192 discharges, do not 'discharge *an individual debtor* from any debt' of the kind listed, § 1192(2)'s cross-reference to § 523(a) does not refer to *any kind of debtor* addressed by § 523(a) but rather to a *kind of debt* listed in § 523(a)." *In re Cleary*, 36 F.4th at 515 (emphasis in original). Put otherwise, the Debtors conflate the noun specified in § 1192(2)—"debt"—with "debtor." And "debt" does not discriminate between individual or corporate debtors. Second, § 523(a)'s preamble, read plainly, only states that an individual debtor cannot discharge the listed types of debt; it says nothing about what a corporate debtor can or cannot discharge.

In effect, § 1192(2)'s cross-reference to "the kind of debt" listed in § 523(a) is simply a convenient way to list the kind of debts that are non-dischargeable under § 1192(2) without restating them. *See In re Cleary*, 36 F.4th at 515.

Our interpretation of the plain language is further informed by "the specific context in which that language is used, and the broader context of the statute as a whole." *United States v. Dawson*, 64 F.4th 1227, 1237 (11th Cir. 2023) (quotation omitted). And we find evidence favoring our interpretation in § 1141, which governs discharge under consensual plans. *See* 11 U.S.C. § 1181(a). Like § 1192, § 1141 provides various exceptions to the debt-discharge procedure. For example, under § 1141(d)(2), "[a] discharge under this chapter does not discharge a *debtor who is an individual* from any

debt excepted from discharge under section 523 of this title." And § 1141(d)(6) states: "the confirmation of a plan does not discharge a *debtor that is a corporation* from any debt—of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a)...." These two sections reveal that when Congress wanted to specify which kinds of *debtors* cannot discharge debts under § 523(a), it has done so through express language in their respective sections. Since the sections themselves limit their scopes, their reference to § 523(a) then serves only to point to the location of the listed debts. So Congress's decision to opt for the broader, all-inclusive "debtor" in § 1192 is further evidence that it covers both individual and corporate debtors alike. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation omitted)).

Section 1141(d)(6) causes additional headaches for the Debtors' position. As the Fourth and Fifth Circuits noted, § 523(a)'s preamble cross-references § 1141. Therefore, if we read "individual debtor" in § 523(a)'s preamble to control all the cross-referenced sections, then it would "erase the corporate debtor discharge exceptions in § 1141(d)(6)." *Matter of GFS Indus.*, 99 F.4th at 230; *see also In re Cleary*, 36 F.4th at 516.

The Debtors present two counter arguments. First, they state that had Congress intended for § 523(a) to apply to both individual and corporate debtors, they would have explicitly said so, as

they did in § 1141(d)(6).  *See In re Off-Spec Sols.*, 651 B.R. at 869.  An "express statement is necessary because § 523(a) is plainly limited to individual debtors."  *Id.*  But we see no reason why using the general term "debtor"—which is defined as either an individual or corporate debtor—is not itself sufficiently express.  Another way of reading § 1192 is "the court shall grant the individual or corporate debtor a discharge of all debts," which is the express statement that the Debtors seek.  But such a statement is unnecessary given Congress's definition of "debtor" in the Bankruptcy Code.  And § 1141(d)(6)'s limitation of its provision to corporate debtor is required, in that context, precisely because of the otherwise inclusive definition of "debtor."

Second, the Debtors seize upon the difference between "the kind" in § 1192(2) versus "a kind" in § 1141(d)(6) to suggest that the use of the definite article "the" indicates a "single, specific kind of debt governed by section 523(a)."  According to the Debtors, "the" is "a function word…indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context." *Nielsen v. Preap*, 586 U.S. 392, 408 (2019) (quoting Merriam-Webster's Collegiate Dictionary 1294 (11th ed. 2005)).  The use of the indefinite article "a" refers to "[s]ome undetermined or unspecified particular."  *McFadden v. United States*, 576 U.S. 186, 191 (2015) (quoting Webster's New International Dictionary 1 (2d ed. 1954)).  So the use of "a kind of debt" under § 1141(d)(6) refers generally to the categories of debt under § 523(a) while § 1192(2)'s use of "the kind of debt" signals a specific type of debt under § 523(a)—those that belong to an individual debtor.

The argument is unpersuasive. First, the Debtors have not identified any cases discussing § 1192 that focus on the difference between "a kind" versus "the kind." The Fourth Circuit noted that such a difference is inconsequential. *In re Cleary*, 36 F.4th at 516 n.2. And even the Debtors' best case supporting their interpretation, *In re Off-Spec Sols.*, has suggested that the phrases "a kind" and "the kind" should be interpreted similarly. *See* 651 B.R. at 870–71. Second, addressing the merits of the argument, the justification for this distinction is too nebulous. Within the context of § 1192(2), the use of "a" or "the" kind would still refer to the list of non-dischargeable debts under § 523(a) because both variations still modify "debt," and as discussed above, "debt" as defined in the Bankruptcy Code is agnostic to the type of debtor. If we stay with "the kind" as set forth in § 1192(2), as we must since that is Congress's language, the natural reading of the statute is the types of debt that are specifically referenced in § 523(a). And even if we were to somehow change the statutory language to "a kind," it would be referencing an "undetermined or unspecified" debt that is then, looking at the rest of the statute, "specified in section 523(a)." Again, it points the reader to the types of debt.

But even applying the indefinite "a" and the definite "the" to the Bankruptcy Code, there is no reason that § 1141(d)(6) would use "of a kind" to specify paragraphs (2)(A) and (2)(B) of § 523(a). Using the Debtors' own argument, if "the" is intended to be used with a specific and definite noun, then § 1141(d)(6) should have been written as "of the kind" because it specifically references

paragraphs (2)(A) and (2)(B) of § 523(a). We thus conclude that this semantical distinction does not help either side of this debate.

Further resisting our interpretation, Debtors invoke the canon against surplusage. According to the Debtors, Congress amended § 523(a) to add § 1192 to the list of discharge provisions in its preamble. So "'[i]nterpreting § 1192 to extract from § 523(a) only the list of nondischargeable debts, without its limitation to individuals, would render the amendment surplusage." *In re Off-Spec Sols.*, 651 B.R. at 867; *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). If § 1192 makes debts specified under § 523(a) non-dischargeable for all debtors, the argument goes, then the preamble's reference to "individual debtor" would be "surplusage." *In re Off-Spec Sols.*, 651 B.R. at 867; *see also In re Hall*, 651 B.R. at 68 ("If Congress intended for § 523(a) exceptions to apply to corporations receiving a discharge under § 1192, then this addition was unnecessary."). Such a result would create a "positive repugnancy" because it results in "§ 523(a) having no effect under § 1192." *In re Off-Spec Sols.*, 651 B.R. at 870 (quotation omitted).

We need not engage with the Debtors' canon-against-surplusage argument because that canon does not allow us to undermine the unambiguous text of § 1192. *See Barton v. U.S. Att'y Gen.*, 904 F.3d 1294, 1301 (11th Cir. 2018) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004)); *United States v. Albertini*, 472 U.S. 675, 680 (1985) ("[I]nterpretative canon[s are] not a license for the judiciary to

16                    Opinion of the Court                    23-12342

rewrite language enacted by the legislature."). But even if we evaluate Debtors' canon-against-surplusage argument, it hurts the Debtors' position just as much. If the concern is surplusage, then there were already redundancies within § 523(a)'s preamble before § 1192 was added. For example, § 523(a)'s preamble references § 727, § 1328(b), and § 1141(d)(2) (included under § 1141), whose respective sections already limit their applicability to individual debtors.

Section 1141(d)(2) is particularly problematic for the Debtors under the canon against surplusage. Recall, § 1141(d)(2) states that "[a] discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title." The inclusion of "who is an individual" is superfluous because, according to the Debtors, § 523[4] is already limited to individual debtors. But if we attempt to give meaning to every word in the statute, as the Debtors ask us to do, then the logical role of the phrase "who is an individual" is to limit the scope of § 1141(d)(2). If that is the case, then § 523 serves only as a location of the non-dischargeable types of debt, and § 523(a)'s preamble is not the limiting factor.

Our conclusion is further bolstered by the *amicus curiae* United States' argument that the reference to § 1192 was added to

---

[4] We note that § 1141(d)(2) references § 523, not § 523(a). For our purposes, we find this difference irrelevant because § 1141(d)(2) discusses which debts an individual debtor cannot discharge, and the only location that discusses non-dischargeable debts is § 523(a).

§ 523(a) through a "conforming amendment," one of thirty other conforming amendments made to Subchapter V. As the Supreme Court has cautioned courts, "Congress does not make 'radical—but entirely implicit—change[s]' through 'technical and conforming amendments." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 431 (2018) (quoting *Director of Revenue of Mo. v. CoBank ACB*, 531 U.S. 316, 324 (2001)). Otherwise put, Congress does not "hide elephants in mouseholes." *Id.* (quoting *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001)). And to be sure, it would be a radical edit to suggest that the included reference to § 1192 in § 523(a)'s preamble somehow implicitly modifies § 1192(2)'s plain language from "kind of debt" to "kind of debtor" as to exempt an entire category of debtors pursuing a non-consensual plan.

The Debtors then turn to the general/specific canon—to the extent there is tension between interpreting two sections, "the more specific provision should govern over the more general." *In re Cleary*, 36 F.4th at 515; *see also RadLAX Gateway Hotel, L.L.C. v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (applying the general/specific canon to the Bankruptcy Code). The Debtors argue that while "§ 1192 has a more specific purpose than § 523(a)," "the language of § 523(a) is more specific than the language of § 1192(2)." *In re Hall*, 651 B.R. at 68. Since § 523(a) is specifically limited to individual debtors and the general language of § 1192 contains no such limitation, § 523(a) is more specific and therefore governs.

Like the canon against surplusage, where the text of the statute is unambiguous, as is the case here, there is no need to rely on the general/specific canon. *CBS*, 245 F.3d at 1225 n.6. And further, there is no need to engage in a general/specific canon analysis because § 1192 and § 523(a) do not necessarily conflict. Section 1192 states that debtors cannot discharge any debts of the kind specified in § 523(a), and § 523(a)'s preamble states that an individual debtor cannot discharge the listed kinds of debts. Nothing within § 523(a)'s preamble necessitates that *only* an individual debtor cannot discharge the listed debts. *See, e.g.*, *In re Van's Aircraft, Inc.*, 2024 WL 2947601, at *6 (Bankr. D. Or. June 11, 2024). As discussed with § 1141(d)(6), some of the listed debts do apply to corporate debtors.

But even addressing the merits, we are unconvinced that the general/specific canon weighs in favor of the Debtors' position. As the Supreme Court stated, the general/specific canon is especially applicable where "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *RadLAX*, 566 U.S. at 645 (quotation omitted). And "[w]hat counts for application of the general/specific canon is not the *nature* of the provisions' prescriptions but their *scope*." *Id*. at 648 (emphasis in original). Here, § 1192(2) is arguably the more specific provision because it specifically deals with Subchapter V discharges under a non-consensual plan, while "§ 523(a) cuts across various Bankruptcy Code provisions." *In re GFS Indus.*, 99 F.4th at 229.

Separately, the Debtors argue that some of the listed debts—like § 523(a)(5) which makes debt "for a domestic support

obligation" non-dischargeable—do not logically apply to corporate debtors. But it is irrelevant that not all the listed debts under § 523(a) apply to corporate debtors because § 1192 is not limited to just corporate debtors. *See, e.g.*, 11 U.S.C. § 1141(d)(6).

Next, the Debtors direct us to this Court's precedent where we have said that "[s]ection 523 is not applicable" in Chapter 11 cases where the defendants are "corporate debtors." *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 834 (11th Cir. 1989). But *In re Spring Valley Farms* was decided before Congress amended § 1141 to add § 1141(d)(6) which brought corporate debtors within the ambit of § 523(a). *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No., 109-8, § 708, 119 Stat. 23. So our statement in *In re Spring Valley Farms* that § 523(a) does not apply to corporate debtors is no longer applicable, thus opening the door for a more expansive application of its list of debts. *See Stanley v. City of Sanford*, 83 F.4th 1333, 1341 (11th Cir. 2023) ("[W]e consider a prior precedent overruled by subsequent legislation only if" as here "the congressional amendment represents a clear change in the law." (quotation omitted)). Nor did *In re Spring Valley Farms* address the subsequently enacted language of § 1192—referring to "the kind of debt" listed in § 523(a).

Lastly, the Debtors argue that adopting BenShot's position would result in an inconsistent application of § 523(a) under a consensual plan versus a non-consensual plan. The Debtors state that § 523(a) would not apply to a corporate debtor who confirms a consensual plan under § 1191(a) and receives a discharge under

§ 1141(d). Therefore, to maintain consistency, § 523(a) should also not apply to a corporate debtor who confirms a non-consensual plan under § 1191(b). But we see no inconsistency. First, a corporate debtor pursuing a consensual plan under § 1191(a) is still subject to § 523(a), as illustrated in § 1141(d)(6). Second, there is a logical explanation for this different treatment—Subchapter V encourages the confirmation of consensual plans. *See In re 218 Jackson LLC*, 631 B.R. 937, 946 (Bankr. M.D. Fla. 2021); *see also* 11 U.S.C. § 1183(b)(7) (requiring a Subchapter V trustee to "facilitate the development of a consensual plan of reorganization"). And third, the plain language of § 1192 is clear, and the application of § 523(a) is consistent across § 1192 and § 1141(d).

In summary, based on the plain language of the statute, we hold that under § 1192, both individual and corporate debtors cannot discharge any debts of the kind listed in § 523(a). In doing so, we align ourselves with the Fourth and Fifth Circuits that have come to the same conclusion.[5]

## IV.    CONCLUSION

We acknowledge that this question is a close call because of the interplay between § 1192's language and § 523(a)'s preamble. But we believe that our textual and contextual analyses provide a definitive answer that the plain language of § 1192 excepts both individual and corporate debtors from discharging any debt "of the

---

[5] As we find § 1192's plain text unambiguous, we see no need to consider the parties' policy arguments.

23-12342                Opinion of the Court                21

kind" specified in § 523(a).  We cannot ignore the plain text of § 1192 which applies to individual and corporate debtors and the reference to "debt," which is agnostic as to who the holder is.  Accordingly, we reverse the bankruptcy court's order and remand the case for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

23-12342                    Luck, J., dissenting                    1

LUCK, Circuit Judge, dissenting:

The majority of our nation's bankruptcy courts that have reached the issue, *see, e.g.*, *In re Off-Spec Sols., LLC*, 651 B.R. 862, 865–72 (B.A.P. 9th Cir. 2023); *In re R&W Clark Constr., Inc.*, 656 B.R. 628, 633–39 (Bankr. N.D. Ill. 2024), *rev'd*, No. 24 CV 1463, 2024 WL 4789403 (N.D. Ill. Nov. 14, 2024); *In re GFS Indus., LLC*, 647 B.R. 337, 341–52 (Bankr. W.D. Tex. 2022), *rev'd*, 99 F.4th 223 (5th Cir. 2024); *In re Lapeer Aviation, Inc.*, No. 21-31500-JDA, 2022 WL 1110072, at *2 (Bankr. E.D. Mich. Apr. 13, 2022); *In re Cleary Packaging LLC*, 630 B.R. 466, 470–76 (Bankr. D. Md. 2021), *rev'd*, 36 F.4th 509 (4th Cir. 2022); *In re Rtech Fabrications*, LLC, 635 B.R. 559, 563–66 (Bankr. D. Idaho 2021); *In re Satellite Rests. Inc. Crabcake Factory USA*, 626 B.R. 871, 874–79 (Bankr. D. Md. 2021), including every bankruptcy court in our circuit, *see, e.g.*, *In re Davidson*, No. 23-30018, 2025 WL 511226, at *2–5 (Bankr. N.D. Fla. Feb. 14, 2025); *In re Ra Custom Design, Inc.*, No. 23-58494-SMS, 2024 WL 607716, at *1–3 (Bankr. N.D. Ga. Feb. 13, 2024); *In re Hall*, 651 B.R. 62, 67–69 (Bankr. M.D. Fla. 2023), have held that the nondischargeability provisions of 11 U.S.C. section 523(a) are not applicable to corporate debtors who confirm nonconsensual plans (cramdowns) under subchapter V. Because these courts have the best reading of the bankruptcy code, I respectfully dissent.